1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7   TERRENCE M. SINGLETON,                    Case No. 19-cv-00428-WHO (PR)

8                 Petitioner,

9            v.                               **ORDER DENYING PETITION FOR**
                                              **WRIT OF HABEAS CORPUS**
10   JASON PICKETT,

11                 Respondent.

12
13                                  **INTRODUCTION**

14          Petitioner Terrence M. Singleton seeks federal habeas relief under 28 U.S.C. § 2254

15   from his California state convictions for robbery on grounds that the charges (and one jury

16   instruction) were not supported by sufficient evidence.  His claims lack merit.  There was

17   sufficient evidence that: the stolen items were obtained through force or fear, as shown by

18   the frightened reactions of the victims; his identity was established by his presence in the

19   vehicle and fleeing from police; he had constructive possession of the stolen items because

20   he exited a vehicle containing his fellow robbers and the stolen items; and, for that reason,

21   the jury instruction on making permissive inferences based on constructive possession was

22   appropriate.  The petition is DENIED.

23                                   **BACKGROUND**

24          In December 2013, Singleton, along with codefendants Dishon Irving and Derek

25   Gould, robbed two customers at a San Francisco gas station.  (Ans., State Appellate

26   Opinion, Dkt. No. 36-24 at 186.)[1]  They took an "iPhone, debit card, belt, U.S. currency

27   _____

28   [1] *People v. Singleton*, No. A148969, 2018 WL 1281675, at *1 (Cal. Ct. App. Mar. 13,
     2018).

United States District Court
Northern District of California

1  from the person . . . of Christian Seeney," and took an "iPad, gold chain, cell phone, belt,

2  U.S. currency from . . . Troy Konaris." (*Id.* at 188.)  The police arrived "within minutes"

3  after the robbery was reported.  Konaris was "clearly angry" while Seeney was "shaken

4  but more subdued." (*Id.*)  Officer Cuevas testified that Konaris "said that he feared that he

5  would be killed . . . he feared for his life and Mr. Seeney's life." (*Id.*)

6       The police obtained a license plate number from an unidentified person and

7  broadcast the information, which included a description of a silver-colored vehicle. (*Id.*)

8  The broadcasting officer had seen video footage recorded by the station's camera. (*Id.*)

9  He testified that the video showed "the two victims get into a black vehicle; a silver car

10  pulled up behind the black one, effectively preventing it from moving; two men left the

11  silver car and walked over to the black vehicle; the two men stayed by the black car for a

12  few minutes; and then they returned to the silver car, which promptly left the scene." (*Id.*)

13       An officer who heard the broadcast "identified the silver vehicle as belonging to

14  Derek Gould, whom the officer knew." (*Id.* at 189.)  About five hours after the crime, this

15  officer saw Gould's silver car, which he followed until it stopped.  Singleton "jumped out

16  of the passenger side and began running." (*Id.*)  He was chased and apprehended.  "Within

17  an hour, Konaris and Seeney were separately brought in a police vehicle to determine if

18  they could identify defendant, Gould, and Irving." (*Id.*)  They stayed in the police vehicle,

19  both seemed fearful of being seen by Singleton, Gould, and Irving. (*Id.*)

20       A search of Gould's car yielded Seeney's driver's license and his ATM card, which

21  was in Gould's jacket; two hidden handguns; a gold necklace; a Gucci belt; and iPad with

22  case; and a number of cell phones.  Two of the phones, the necklace, the iPad and its case

23  belonged to Konaris. (*Id.*)

24       After they committed the crimes and before they were arrested, Singleton, Gould

25  and Irving "drove to Richmond, where they unsuccessfully attempted to use Seeney's

26  ATM card to get money." (*Id.*)  A receipt memorializing the attempt was found on Irving

27

28

2

when he was arrested.  (*Id.*)

The victims did not testify at trial.  The jury heard recordings of telephone calls made by Singleton, Gould, and Irving while they were in jail and awaiting trial.  (*Id.*)  "The common theme of the calls was the implicit threat of violence directed at those who break the 'street justice' norm of not 'snitching' to law enforcement.  The inference the jury could draw was that the threats accounted for the absence of both victims at the trial."  (*Id.*)

In 2015, a San Francisco Superior Court jury convicted Singleton of two counts of second degree robbery.  (*Id.* at 186.)  The jury also found true an allegation Singleton had a prior felony conviction.  (*Id.*)  In 2016, a sentence of 13 years was imposed.  (*Id.*)  Singleton's direct appeals to the appellate and supreme court were unsuccessful.  (It appears Singleton did not pursue state collateral relief.)  This federal habeas petition followed.

Singleton's claims for federal habeas relief are that there was insufficient evidence (i) of force or fear; (ii) of identity; (iii) of constructive possession of stolen property; and (iv) for the permissive inference instruction.[2]

### STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] These are the claims that remained after respondent filed a motion to dismiss the unexhausted claims and the Court granted Singleton's motion to withdraw his unexhausted claims.  (Dkt. Nos. 28, 29, and 30.)

United States District Court
Northern District of California

1  (2) resulted in a decision that was based on an unreasonable determination of the facts in

2  light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

3    "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

4  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

5  of law or if the state court decides a case differently than [the] Court has on a set of

6  materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13

7  (2000).

8    "Under the 'unreasonable application' clause, a federal habeas court may grant the

9  writ if the state court identifies the correct governing legal principle from [the] Court's

10  decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at

11  413.  "[A] federal habeas court may not issue the writ simply because that court concludes

12  in its independent judgment that the relevant state court decision applied clearly

13  established federal law erroneously or incorrectly.  Rather, that application must also be

14  unreasonable."  *Id.* at 411.  A federal habeas court making the "unreasonable application"

15  inquiry should ask whether the state court's application of clearly established federal law

16  was "objectively unreasonable."  *Id.* at 409.

17  **DISCUSSION**

18    Singleton's claims for federal habeas relief are that there was insufficient evidence

19  (i) of force or fear; (ii) of identity; (iii) of constructive possession of stolen property; and

20  (iv) for the permissive inference instruction.

21  **i. Sufficiency of Evidence of Force or Fear**

22    Singleton claims that "there was insufficient evidence for the jury to conclude the

23  property was acquired by force or fear."  (Am. Pet., Dkt. No. 19 at 22, 26-30.)  He

24  contends the jury's conclusion was speculative and that there were "numerous possible

25  explanations" for the handing over of the property.  (*Id.* at 28.)

26    This claim was rejected on appeal.  "There was more than sufficient circumstantial

27  evidence to establish that Konaris and Seeney had personal property taken from them by

28  force or fear."  (Ans., State Appellate Opinion, Dkt. No. 36-24 at 189.)  One police officer

4

"described Seeney as being 6'5" tall, while Konaris was about 5'10" . . . [y]et they were parted from valuable items of personal property, property that was subsequently found either on or about the persons in Gould's vehicle." (*Id.*)  Because there was no evidence that physical force was used, "it is eminently reasonable to conclude Konaris and Seeney were intimidated or coerced into surrendering those items by the actual or implicit threat of force." (*Id.* at 189-190.)  The intensity of the threat posed by Singleton and the other defendants is demonstrated by the victims' "subsequent agitation and palpable dread of being spotted by the defendants while in the police vehicles." (*Id.* at 190.)  "In short, there is abundant evidence that Konaris and Seeney were robbed." (*Id.*)

When reviewing a state court's conviction for sufficiency of the evidence, a federal court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  *Id.* at 324.  "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  In addition to this highly deferential standard, a federal court must accord "considerable deference" to a state court's determination that there was sufficient evidence under *Jackson*.  *Id.*

A federal habeas court reviews a sufficiency of evidence claim "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.  California Penal Code § 211 defines robbery as: "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  The "fear" in § 211 may be either:

> 1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family or;
>
> 2. The fear of an immediate and unlawful injury to the person or property

of anyone in the company of the person robbed at the time of the robbery.

(Ans., State Appellate Opinion, Dkt. No. 36-24 at 187.)  The state appellate court cited state law showing that the fear element "is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for [his] property." (*Id.*)  This fear, which need not be extreme, is "subjective" and "requires proof that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." (*Id.* at 187-188.)  Fear may be inferred from circumstances and need not be "testified to explicitly by the victim." (*Id.* at 188.)  When the fear is caused by intimidation, it can be "established by proof of conduct, words, or circumstances reasonably calculated to produce fear." (*Id.*)

Habeas relief is not warranted here because there was sufficient evidence to satisfy *Jackson*.  "Fear" can be inferred from the victims' "agitation and palpable dread" of being seen by defendants during the identification, and because, despite their stature, the victims gave over their valuable property to defendants without having physical force applied to them.  Officer Cuevas testified that Konaris was "extremely upset" and "very animated": "There was a lot of hand gestures and motions.  He kind of had a frown on his face, his brow was kind of frowned down, his fists were kind of clenched, kind of rigid in his movements.  He was — just seemed agitated, kind of up and down, up and down." (Ans., Reporter's Transcript, Dkt. No. 36-11 at 94-95.)  Officer Cuevas also testified that Konaris "said that he feared that he would be killed . . . he feared for his life and Mr. Seeney's life." (*Id.*, State Appellate Opinion, Dkt. No. 36-24 at 188.)  Officer Larsen testified that when he first arrived at the scene Konaris was "shaking, his hands, he was clenching his jaw, he was essentially ranting a little bit; upset." (*Id.*, Reporter's Transcript, Dkt. No. 36-10 at 152.)  Seeney was described by Cuevas as "fearful . . . his eyes were kind of wide still.  He appeared as if he was in shock." (*Id.*, Dkt. No. 36-11 at 95.)  Larsen testified that Seeney appeared "shocked." (*Id.*, Dkt. No. 36-10 at 152.)

All this evidence of fright, agitation, and shock supports a finding that the victims gave over their property under "fear of an unlawful injury to the person or property of the

6

person robbed." (Ans., State Appellate Opinion, Dkt. No. 36-24 at 187.) On this record, the jury's finding does not fall below the threshold of bare rationality and Singleton's claim cannot succeed.

Singleton's contention is also a challenge to the jury's credibility finding in favor of the state. A jury's credibility determination is entitled to near-total deference. *Jackson*, 443 U.S. at 326. If confronted by a record that supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* I must defer to the jury's credibility determination in favor of the prosecution's arguments and evidence, and its rejection of Singleton's defense.

This record also demonstrates that the state court's rejection of the claim was reasonable, and therefore such decision is entitled to AEDPA deference. This claim is DENIED.

### ii.     Sufficiency of Evidence of Identity

Singleton claims that there was insufficient evidence that he was one of the perpetrators. (Am. Pet., Dkt. No. 19 at 30.) He contends that he was not wearing the same clothing as any person identified as the gas station. One suspect wore a hooded jacket with stripes on the inside over an orange, black and white shirt, while Singleton was arrested wearing "a gray zip-up San Francisco Giants jacket with orange and black writing across the front, a black and gray striped sweater with a hood and black Nike brand T-shirt with writing in the front in orange, white and gray." (*Id.* at 31.)

This claim was rejected on appeal. Singleton's interpretation "reflects an unduly narrow view of the evidence." (Ans., State Appellate Opinion, Dkt. No. 36-24 at 190.) There was time between the robbery and apprehension for the perpetrators to drive from San Francisco to Richmond (and back again) and "plenty of time for defendant to change clothes." (*Id.*) Though Singleton was not carrying any of the stolen items when he was apprehended, he had just exited a vehicle "filled with stolen items, items that could be deemed to be in his constructive possession" under state law. (*Id.* at 190-191.)

1    Also, "[h]aving spotted the officers, [Singleton's] flight may itself be credited by the jury

2    as consciousness of guilt under state law.  (*Id.* at 191.)  "But guilt of what?  The most

3    logical feeling of guilt would be for the robbery of Konaris and Seeney."  (*Id.*)

4    Furthermore, his "presence with Gould and Irving before and after the charged offenses

5    could also tie him to the robberies."  (*Id.*)

6          Habeas relief is not warranted here because there was sufficient evidence to satisfy

7    *Jackson*.  The jury had sufficient evidence of identity:  Singleton was apprehended after

8    exiting a vehicle containing the stolen items; he attempted to flee upon seeing the officers;

9    he was with Gould and Irving before and after the robbery; and he was with Irving when

10   he stopped to withdraw money from an ATM.  On this record, the jury's finding does not

11   fall below the threshold of bare rationality and Singleton's claim cannot succeed.  This

12   record also demonstrates that the state court's rejection of the claim was reasonable is

13   entitled to AEDPA deference.  This claim is DENIED.

14   **iii.    Sufficiency of Evidence of Constructive Possession**

15         Singleton claims that there was not sufficient evidence to show constructive

16   possession.  The basis of his claim is that because there was insufficient evidence of force

17   or fear, there was insufficient evidence of constructive possession.  (Am. Pet., Dkt. No. 19

18   at 22, 25-26.)  But, as noted above, the state appellate court found there was sufficient

19   evidence of force or fear, a conclusion I found reasonable under AEDPA.  His claim fails.

20         Additionally, there was sufficient evidence to show constructive possession, as the

21   state appellate court found:

22        [Singleton] had just bailed out of a vehicle filled with stolen items, items
     that could be deemed to be in his constructive possession.  (*See, e.g.,*
23        *People v. Land* (1994) 30 Cal. App. 4th 220, 223-228 [evidence supported a
     finding that the passenger had constructive possession of the stolen vehicle
24        because of the passenger's 'close relationship to the driver, use of the
     vehicle for a common criminal mission, and stops along the way before
25        abandoning it (during which [the passenger] apparently made no effort to
     disassociate himself from his friend or the stolen vehicle)'].
26

27

28

1  (Ans., State Appellate Opinion, Dkt. No. 36-24 at 190.)

2      Singleton has not overcome the high barrier AEDPA poses.  The state court's

3  rejection of the claim was reasonable and is entitled to AEDPA deference.  This claim is

4  DENIED.

5  **iv.      Instructional Error**

6      Singleton contends that his possession of stolen property was not sufficient to

7  justify the trial court giving an instruction on permissive inferences.  (Am. Pet., Dkt. No.

8  19 at 22, 33, 58-61.)  This claim was rejected on appeal.  "[Singleton's] final argument is

9  that the jury should not have been allowed to draw the permissive inference because there

10  was insufficient evidence that he ever possessed any items of personal property taken from

11  Seeney and Konaris.  The first part of this opinion discussed the sufficiency of the

12  evidence, including evidence of defendant's possession.  Although that evidence cannot be

13  called overwhelming, it is an adequate basis for a permissive inference."  (Ans., State

14  Appellate Opinion, Dkt. No. 36-24 at 206.)

15      The following instruction (CALCRIM No. 376, "Possession of Recently Stolen

16  Property as Evidence of a Crime") was given to the jury:

> If you conclude that the defendant knew he possessed property and you
> conclude that the property had in fact been recently stolen, you may not
> convict the defendant of robbery, grand theft, or petty theft based on those
> facts alone.  However, if you also find that supporting evidence tends to
> prove his guilt, then you may conclude that the evidence is sufficient to prove
> he committed robbery, grand theft, or petty theft.
>
> The supporting evidence need only be slight and need not be enough by itself
> to prove guilt.  You may consider how, where, and when the defendant
> possessed the property, along with any other relevant circumstances tending
> to prove his guilt of robbery, grand theft, or petty theft.  Remember that you
> may not convict the defendant of any crime unless you are convinced that
> each fact essential to the conclusion that the defendant is guilty of that crime
> has been proved beyond a reasonable doubt.

(*Id.*)  In a separate instruction, the trial court told the jury that:

> [s]ome of these instructions may not apply, depending on the findings about

United States District Court
Northern District of California

the facts of the case.  Do not assume that just because I give a particular instruction that I am suggesting anything about the facts.  After you have decided what the facts are, follow the instructions that do apply to the facts as you find them.

(*Id.*, Reporter's Transcript, Dkt. No. 36-15 at 170-171.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the improper instruction by itself so infected the entire trial that the resulting conviction violates due process.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *Estelle*, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982).

Habeas relief is not warranted here because there was sufficient evidence to justify the instruction.  The state appellate court determined that there was sufficient evidence of possession, and I found that conclusion reasonable under AEDPA.  Because there was sufficient evidence of possession, giving CALCRIM No. 376 ("Possession of Recently Stolen Property as Evidence of a Crime") was not a violation of due process.

Also, the second instruction quoted above insured that the jury would only use CALCRIM No. 376 if it had determined there was sufficient evidence of possession. Jurors are presumed to follow their instructions.  *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

Moreover, there is no clearly established law that due process is violated if an instruction is given that is not supported by the evidence.  Because jurors are well equipped to analyze evidence, "their own intelligence and expertise will save them" from "relying upon a factually inadequate theory" of liability.  *Griffin v. U.S.*, 502 U.S. 46, 59-60 (1991) ("if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration.  The refusal to do so, however, does not provide an

independent basis for reversing an otherwise valid conviction.")

Accordingly, the state court's rejection of the claim was reasonable and is entitled to AEDPA deference.  This claim is DENIED.

## CONCLUSION

The state court's adjudication of Singleton's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The petition is DENIED.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Singleton may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:**  October 5, 2021



WILLIAM H. ORRICK
United States District Judge